PEOPLE v TAYLOR

Docket No. 216362. Submitted December 5, 2000, at Detroit. Decided April
    6, 2001, at 9:15 A.M. Leave to appeal sought.

Willie J. Taylor was convicted of armed robbery following a bench
    trial in the Wayne Circuit Court, Carole F. Youngblood, J. The
    defendant appealed, arguing that the prosecutor presented insuffi-
    cient evidence that, during the robbery, the defendant was armed
    with a dangerous weapon or that he used or fashioned an article to
    lead the complainant to reasonably believe it to be a dangerous
    weapon. The defendant also challenged the admission of evidence
    of his invocation of the right to remain silent after his arrest.

    The Court of Appeals *held*:

    1. A defendant may be convicted of armed robbery in a case
    involving a feigned weapon if there is sufficient evidence that, dur-
    ing the robbery, the defendant simulated a weapon so as to induce
    the victim to reasonably believe that the defendant was armed and,
    by word or conduct, threatened the victim by announcing a rob-
    bery or otherwise suggesting the potential use of the weapon. In
    this case there was sufficient evidence to support the defendant's
    conviction. The complainant, a clerk at a gasoline station, testified
    at trial that the defendant, during the robbery at the station, placed
    his hand inside his jacket and in his waistband, that there was a
    bulge in the defendant's jacket, that the defendant announced,
    "This is a stick up," and that the defendant's hand grabbed for and
    remained on the bulge as he took the money from the cash register
    with his other hand and as he left the station.

    2. The trial court erred harmlessly in admitting a police detec-
    tive's testimony that the defendant, after being arrested, requested
    an attorney and refused to be interviewed. The prosecutor did not
    elicit the testimony of the detective, who made the statement unex-
    pectedly in the course of testifying about another issue, and the
    testimony did not reveal any new information regarding the defen-
    dant's guilt or innocence. Furthermore, the trial court's decision
    was not affected by the disputed testimony because the trial court
    found the defendant guilty on the basis of other, properly admitted
    evidence.

    Affirmed.

1. Robbery — Armed Robbery — Feigned Weapons.

Evidence that a defendant simulated a weapon so as to induce a victim to reasonably believe that the defendant was armed and that the defendant, by word or conduct, threatened the victim by announcing a robbery or otherwise suggesting the potential use of the weapon establishes the "armed" element of armed robbery in a case involving the use of a feigned weapon (MCL 750.529).

2. Criminal Law — Evidence — Right to Remain Silent — Appeal.

The erroneous admission of a police officer's testimony that a defendant invoked the right to remain silent after being arrested is harmless and does not require the reversal of the defendant's conviction on appeal where the testimony was not solicited by the prosecution and did not reveal any new information regarding the defendant's guilt or innocence.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Karen M. Woodside*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Chari K. Grove*), for the defendant on appeal.

Before: Saad, P.J., and White and Hoekstra, JJ.

Saad, P.J.

### I. NATURE OF THE CASE

Defendant appeals as of right his bench trial conviction of armed robbery pursuant to MCL 750.529, which provides in part:

Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, *such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a*

*dangerous weapon,* shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years.

Defendant argues that the prosecutor presented insufficient evidence that, during the robbery, defendant was armed with a dangerous weapon or that he used or fashioned an article to lead complainant to reasonably believe it to be a dangerous weapon.[1]

Typically, to prove the "armed" element of armed robbery, the prosecutor submits into evidence the weapon itself or presents the testimony of a witness who saw the weapon while the perpetrator committed the act. However, in a hidden or feigned weapon case, in which a defendant obscures or simulates a weapon to induce the victim to turn over money or other property to the defendant, the prosecutor need not present the weapon itself or its specific description at trial. Rather, in a "feigned weapon" case, the prosecutor meets the "armed" requirement of the statute by proving that during the commission of a robbery the defendant simulated a weapon so as to induce the victim to reasonably believe he was armed. Here, because the defendant placed his hand under his clothing, the victim observed a bulge under the clothing, and defendant announced a robbery ("This is a stick up"), all of which led the victim to reasonably believe defendant was armed, we find that the prosecutor met his burden by introducing a sufficient quantum of evidence to prove the "armed" element of armed robbery.

---

[1] Defendant also claims that the trial court improperly admitted evidence of defendant's invocation of his right to remain silent after his arrest and that his waiver of his right to a jury trial was invalid. We will address both of these issues.

## II. FACTS

On February 28, 1998, just before 4:00 A.M., defendant knocked on the locked door of a Mobil gasoline station and asked the clerk on duty, complainant, to let him inside. Defendant waived to complainant as though he needed help and complainant opened the door so defendant could enter the station. Defendant stood near the counter and said he needed some water for his car. Complainant, now standing behind the counter near the cash register, told defendant he did not have any radiator water available for sale. Defendant then mumbled a few words while stepping closer to the counter. Defendant placed his hand inside his partially buttoned jacket and into the front of his pants. Complainant testified that defendant appeared to grab something inside his jacket and that he saw a bulge near defendant's hand. Defendant said to complainant, "This is a stick up," and, "Open the drawer," referring to the cash register. Complainant complied and then lifted his hands in the air. Defendant's right hand remained inside his jacket while he used his left hand to take approximately $440 from the cash register.

After taking the money, defendant backed away from the counter and continued to watch complainant as he left the station. As defendant got into a car and pulled away, complainant observed the license plate number. Complainant then called the police to report the robbery and he gave them the license plate number and a description of the car. Police arrested defendant days later, and complainant identified defendant as the perpetrator at a police lineup and at trial.

III. ANALYSIS

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999), citing *People v Wolfe*, 440 Mich 508, 515-516; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

The armed robbery statute requires a showing that the defendant was "armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon." MCL 750.529. By allowing proof that the defendant simulated a weapon to induce the victim to believe it to be a dangerous weapon, the statute recognizes (1) the difficulty of proving actual possession of a dangerous weapon if, as in many cases, the robber obscures or feigns a weapon to induce compliance by a victim and (2) the aggravated nature of a confrontation in which no weapon is visible, but the robber's conduct leads the complainant to reasonably believe the robber is armed.

While this portion of the armed robbery statute focuses on the belief of the victim that the defendant was armed, that belief must be reasonable and our courts have long recognized that the victim's *subjective* belief alone is insufficient to support a conviction of armed robbery. *People v Jolly*, 442 Mich 458, 468; 502 NW2d 177 (1993). Therefore, the prosecutor must submit "some objective evidence of the existence of a

weapon or article" to the finder of fact. *Id.* The nature and quantity of that evidence has been addressed by our Supreme Court in two "feigned weapon" cases that control our decision here.

In *Jolly*, two robbers, a male and a female, entered a fast-food restaurant and demanded money from the victim, who was working there as a cashier. *Jolly, supra* at 461. The female told the victim that her companion had a gun and that he would shoot unless the victim turned over the money. *Id.* The victim testified that he never saw a weapon, but that he observed a bulge under the defendant's vest even though the defendant's hands were visible throughout the confrontation. *Id.* at 461, 463. The trial court denied the defendant's motion for a directed verdict, and he was convicted of unarmed robbery. *Id.* at 464. This Court reversed, finding the evidence insufficient to enable a trier of fact to find the defendant was armed and that the armed robbery charge should not have been submitted to the jury. *Id.* at 464-465.

However, the Supreme Court reversed the decision of the Court of Appeals and reinstated the defendant's conviction, holding that the circumstantial evidence was sufficient for the jury to objectively determine the existence of a dangerous weapon. *Id.* at 470-471. The Court stated that, where the prosecutor attempts to prove that the defendant was armed with an article used or fashioned to feign a weapon, actual possession of an article is required to satisfy the "armed" element. *Id.* at 467. The Court then addressed the question of what constitutes "actual possession" for purposes of the statute and opined:

> [T]here must be some objective evidence of the existence of a weapon or article before a jury will be permitted to

assess the merits of an armed robbery charge. For example, an object pointing out from under a coat, together with statements threatening a victim with being shot, clearly satisfies the statutory definition of armed robbery. In such a case, there is evidence of actual possession of a weapon or article and the testimony regarding statements that, if believed, make clear an intent to convince the victim of the existence of such a weapon or article. [*Id.* at 468-469.]

The Court observed that the complainant's subjective belief alone is insufficient to satisfy the armed element, but that objective evidence may support the reasonable conclusion that a defendant is armed in a feigned weapon case. *Id.* at 467-468. The Court explained:

The typical armed robbery case prosecuted under the feigned weapon method involves either the use of a toy gun or a finger or other object hidden in a bag or under a coat to simulate the appearance of a weapon together with threatening behavior and statements indicating the existence of a weapon. The existence of some object, whether actually seen or obscured by clothing or something such as a paper bag, is objective evidence that a defendant possesses a dangerous weapon or an article used or fashioned to look like one. Related threats, whether verbal or gesticulatory, further support the existence of a weapon or article. [*Id.* at 469-470.]

The Court further stated that "the factfinder must be permitted to determine the existence of a weapon or an article used or fashioned to resemble one on the basis of all circumstantial evidence where the evidence is 'sufficient.' " *Id.* at 470, citing *State v McCracken*, 829 SW2d 634 (Mo App, 1992). Accordingly, the Court concluded that the evidence presented at trial was sufficient to submit the armed robbery charge to the jury though, in *Jolly*, the jury

ultimately concluded that the defendant was unarmed. *Jolly, supra* at 461, 470-471.

The Supreme Court again addressed a "feigned weapon" case in *People v Banks,* 454 Mich 469; 563 NW2d 200 (1997), in which the defendant and an accomplice, Hubbard Hudson, entered a convenience store and Hudson told the clerk, "You are going to be robbed." *Id.* at 471. The clerk testified that, when Hudson ordered her to empty the cash register, he had his hand in his jacket pocket and "kind of moved it around a little bit," but that she never saw a weapon or a bulge in Hudson's pocket. *Id.* at 471, 475. The complainant also testified that Hudson took his hand out of his pocket when he grabbed some lottery tickets and that, when he did so, she did not see a weapon or other article resembling a weapon in his pocket. *Id.* at 471.

On appeal, the defendant claimed there was insufficient evidence to support his conviction of aiding and abetting armed robbery. *Id.* at 470-471. The Court of Appeals affirmed his conviction, but the Supreme Court reversed, finding the evidence legally insufficient to support an armed robbery conviction:

> In *Jolly,* the majority held that the woman robber's threat that the male robber would shoot the victim if he did not comply and the victim's observation of a bulge under the male robber's vest "located in a place where a handgun could conceivably be concealed," was sufficient circumstantial evidence to submit the armed robbery charge to the jury. We believe that this interpretation of the "evidence" constitutes the absolute minimum level of evidence sufficient to support an armed robbery conviction, and we hold that the evidence in the case at bar is well below this minimum level. [*Id.* at 475 (citation omitted).]

The Court found the facts of *Banks* similar to those in *People v Saenz*, 411 Mich 454; 307 NW2d 675 (1981), in which the victim subjectively thought the defendant was armed, but never saw any article that resembled a weapon or heard any threat regarding the potential use of a weapon. *Id.* at 475. In *Banks*, the Court concluded that the evidence was insufficient to support an armed robbery conviction, stating:

> The victim did not see any weapon, nor did she see any article fashioned as a weapon. It was not threatened that she would be shot if she did not comply with the robbers' demands. There was no objective evidence that defendant's accomplice was "armed with a dangerous weapon, or any article used or fashioned in a manner to lead the [victim] . . . to reasonably believe it to be a dangerous weapon . . . ." [*Banks, supra* at 480-481.]

Here, our determination of this issue depends on whether the circumstantial evidence presented was sufficient, in light of *Jolly* and *Banks*, for a rational trier of fact to conclude that defendant used some article, which includes his hand, to lead complainant to reasonably believe defendant had a dangerous weapon. See *People v Burden*, 141 Mich App 160, 165; 366 NW2d 23 (1985). We recognize that there may be some confusion created by *Jolly* and *Banks* regarding the quantum of evidence required to support a conviction in a feigned weapon case, particularly because *Jolly* resulted in a conviction of *un*armed robbery and the Court deemed the evidence in *Banks* insufficient to support an armed robbery conviction. However, a plain reading of the statute and a fair reading of those cases leads us to conclude that the evidence presented in this case was clearly sufficient for a

rational trier of fact to find that the armed element was proved beyond a reasonable doubt.

Contrary to defendant's argument on appeal, the evidence adduced at trial went well beyond a mere subjective belief that defendant was armed during the robbery. Rather, there was ample objective evidence that defendant either had a gun or simulated one so as to deliberately lead complainant to "reasonably believe" he had a gun. Complainant testified that, during the robbery, defendant placed his hand inside his jacket and into the front of his pants. Objectively, defendant could have carried a weapon under his jacket and in his waistband. As in *Jolly*, complainant also testified to the presence of a bulge in defendant's jacket, indicating that defendant actually possessed a weapon or fashioned his hand or some other article to feign a weapon. Complainant specifically stated, "I knew there was a piece in there the way he grabbed it and the way it was [sic] his hand and the jacket were bulged." Indeed, defendant's hand grabbed for and remained on the bulge inside his jacket as he took the money from the register and left the station.

This visual evidence was bolstered by complainant's testimony that defendant made a verbal threat, "This is a stick up," while grabbing for the object in his jacket. While defendant did not specifically threaten to shoot complainant, the phrase "this is a stick up" is universally understood to indicate the presence of a weapon. Accordingly, this threat, along with defendant's demand that complainant open the cash register, could objectively lead complainant to believe that defendant possessed a gun or other dangerous weapon. Furthermore, we decline to hold that a defendant must verbally threaten the victim with some specific bodily harm in order to obtain a convic-

tion of armed robbery. If there is sufficient evidence that, during the course of the robbery, the defendant simulates a weapon so as to induce the victim to reasonably believe he is armed and, by word or conduct, threatens the victim by announcing a robbery or otherwise suggesting the potential use of the weapon, then the defendant may be convicted of armed robbery.

The quantum of objective evidence presented here went beyond that in both *Jolly* and *Banks*. In *Banks*, the defendant's statement to the complainant did not suggest the presence of a weapon and there was no visible protrusion in the defendant's pocket. Here, there was objective evidence similar to that in *Jolly*, that defendant had an article and used it to lead complainant to reasonably believe he was armed with a dangerous weapon. Moreover, defendant went a step further than the perpetrator in *Jolly* by placing his hand inside his jacket in a visible attempt to grasp the object creating the bulge so that it was clear that defendant deliberately fashioned his hand or some other article to lead complainant to believe he was armed.

Accordingly, a rational trier of fact could have found, beyond a reasonable doubt, that defendant used some article to simulate a weapon and physically and verbally threatened complainant so as to lead complainant to reasonably believe defendant was armed with a dangerous weapon during the commission of the robbery.

### IV. EVIDENCE OF DEFENDANT'S SILENCE

Defendant asserts that he was deprived of a fair trial and his right to remain silent because the trial

court admitted a police detective's testimony that defendant, after arrest, requested an attorney and refused to be interviewed.

When a defendant exercises his right to silence, his silence cannot be used against him at trial. *People v Avant*, 235 Mich App 499, 509; 597 NW2d 864 (1999). Here, the arresting officer testified that, while defendant was being processed at the Allen Park Police Department, "we wanted to interview him but he asked for an attorney and refused to be interviewed." This testimony referred to defendant's exercise of his right to remain silent and it should not have been introduced.

However, reversal is not warranted. Before this Court will reverse a verdict based on an unpreserved allegation of constitutional error, we must find that the trial court committed a plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

In *People v Kremko*, 52 Mich App 565, 572; 218 NW2d 112 (1974), evidence of the defendant's silence arose during the testimony of the arresting officer. The prosecutor had not elicited this information and, as here, the testifying officer made the statement unexpectedly in the course of testifying about another issue. *Id.* at 572-573. Although the Court found that the testimony in *Kremko* was erroneously admitted, the Court found any error harmless beyond a reasonable doubt because the testimony did not reveal any new information regarding the defendant's guilt or innocence. *Id.* at 573. Here, like in *Kremko*, the arresting officer's testimony regarding defendant's silence was unsolicited and provided no unique information regarding defendant's guilt or innocence.

Furthermore, we are not persuaded that any error in the officer's testimony affected this bench trial verdict. "A judge, unlike a juror, possesses an understanding of the law which allows him to ignore such errors and to decide a case based solely on the evidence properly admitted at trial." *People v Jones*, 168 Mich App 191, 194; 423 NW2d 614 (1988). Our review of the record shows that the trial court found defendant guilty on the basis of other, properly admitted evidence. Because the trial court's decision was not affected by the disputed testimony, defendant has not shown that any error substantially affected his rights and, therefore, his claim must fail.[2]

Affirmed.

---

[2] Defendant alleges that his waiver of his right to a jury trial was invalid. We review the validity of a defendant's waiver for clear error. *People v Leonard*, 224 Mich App 569, 595; 569 NW2d 663 (1997). MCR 6.402(B) guides the trial court in ascertaining a valid waiver:

> Before accepting a waiver, the court must advise the defendant in open court of the constitutional right to trial by jury. The court must also ascertain, by addressing the defendant personally, that the defendant understands the right and that the defendant voluntarily chooses to give up that right and to be tried by the court. A verbatim record must be made of the waiver proceeding.

Consistent with this rule, the trial court asked defendant in open court if he understood that he had a constitutional right to a jury trial. Further, the trial court asked defendant if, knowing his right, he wished to waive it. Defendant then waived his right in the presence of defense counsel and by signing a waiver form. The trial court complied with MCR 6.402(B) and properly ascertained that defendant understood his right to a jury trial and that he voluntarily waived that right. See *People v Shields*, 200 Mich App 554, 560; 504 NW2d 711 (1993). Furthermore, the trial court's failure to specifically ask defendant if he was threatened or promised anything for his waiver does not constitute clear error where defendant makes no claim of coercion or bribery on appeal. *Leonard, supra* at 595-596.