**C O U R T   O F   A P P E A L S**

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STEVEN LEE MOSS,

        Defendant-Appellant.

UNPUBLISHED
June 9, 2015

No.  319954
Oakland Circuit Court
LC No.  2013-244474-FC

Before:  JANSEN, P.J., and SAWYER and FORT HOOD, JJ.

PER CURIAM.

Following a bench trial, defendant was convicted of possession with intent to deliver 1,000 or more grams of cocaine, MCL 333.7401(2)(a)(*i*), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  The trial court sentenced defendant to 15 to 45 years' imprisonment for the drug conviction, and a consecutive two-year term of imprisonment for the felony-firearm conviction.  He appeals as of right.  We affirm.

Defendant's convictions arise from his purchase of 10 kilograms of cocaine from a police undercover informant.  After learning that defendant was interested in acquiring a large amount of cocaine and after conducting preliminary surveillance of defendant's activities, the police arranged for defendant to meet their informant.  In addition to the police testimony, the prosecution presented evidence of video and audio recordings capturing the meetings and telephone conversations between defendant and the informant.  The first meeting, on November 6, 2012, lasted approximately 30 minutes and defendant agreed to purchase 10 kilograms of cocaine.  At their next meeting on November 7, 2012, defendant and the informant discussed the drug deal, and defendant unsuccessfully attempted to persuade the informant to increase the purchase amount to 40 kilograms.  In a restaurant parking lot, the informant showed defendant 10 kilograms of cocaine that were hidden in a compartment of an undercover police van.  Defendant was instructed to contact the informant if he wanted to consummate the deal.  Defendant contacted the informant on November 8, 2012, and they agreed to meet at a restaurant.  They then agreed to transact the drug deal on November 9, 2012, which was when defendant believed he would have all the purchase money.  Defendant unsuccessfully attempted to convince the informant to complete the transaction at defendant's house.  Defendant also discussed his desire for future transactions with the informant.  On November 9, 2012, defendant and the informant met in the parking lot of a Home Depot store, as planned.  The informant was

accompanied by another undercover officer who drove the van containing the drugs, and defendant also brought an associate with him.[1] After defendant showed that he had the purchase money, which was in a suitcase in his car, the men walked to the undercover van where defendant was again shown the product. Defendant took possession of the van keys, got in the driver's seat, and turned on the ignition before the police remotely disabled the van. Defendant fled the vehicle on foot, but was arrested after a brief chase.

## I. ENTRAPMENT

Defendant argues that the trial court erred in denying his motion to dismiss on the basis of entrapment. We disagree. We review de novo the trial court's determination whether the police entrapped a defendant, but review the trial court's findings of fact for clear error. *People v Vansickle*, 303 Mich App 111, 114-115; 842 NW2d 289 (2013). A finding of fact is clearly erroneous if this Court is left with a firm conviction that the trial court made a mistake. *Id*. at 115.

Defendant has the burden of proving the defense of entrapment by a preponderance of the evidence. *People v Johnson*, 466 Mich 491, 498; 647 NW2d 480 (2002); *People v Akhmedov*, 297 Mich App 745, 752; 825 NW2d 688 (2012). "Entrapment occurs if (1) the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or (2) the police engage in conduct so reprehensible that the court cannot tolerate it." *Vansickle*, 303 Mich App at 115 (citation omitted). The police do not engage in entrapment by merely providing a defendant with the opportunity to commit the crime. *Johnson*, 466 Mich at 498. In determining whether defendant was impermissibly induced by the police to commit criminal activity, this Court should consider the following factors:

> (1) whether there existed appeals to the defendant's sympathy as a friend, (2) whether the defendant had been known to commit the crime with which he was charged, (3) whether there were any long time lapses between the investigation and the arrest, (4) whether there existed any inducements that would make the commission of a crime unusually attractive to a hypothetical law-abiding citizen, (5) whether there were offers of excessive consideration or other enticement, (6) whether there was a guarantee that the acts alleged as crimes were not illegal, (7) whether, and to what extent, any government pressure existed, (8) whether there existed sexual favors, (9) whether there were any threats of arrest, (10) whether there existed any government procedures that tended to escalate the criminal culpability of the defendant, (11) whether there was police control over any informant, and (12) whether the investigation was targeted. [*Id*. at 498-499.]

Defendant argues that the police entrapped him by exploiting his friendship with Michael Bennett, who introduced him to the paid police informant, Diego. Defendant's friendship

---

[1] The associate, Lamar Kendrick, was also charged for his participation in the transaction. He pleaded guilty to conspiracy to deliver 1,000 or more grams of cocaine, MCL 750.157a, and possession with intent to deliver 1,000 or more grams of cocaine.

exploitation claim is two-fold: (1) that Bennett appealed to defendant's sympathy, claiming to be in danger because he owed people money, and (2) that because of their friendship, Bennett knew that defendant was vulnerable because he was in danger of losing his West Bloomfield home, and Bennett used that information to pressure defendant into participating in drug trafficking. We agree with the trial court that the record does not support defendant's claim that he was unduly pressured into purchasing the drugs or that he was an unwilling participant.

Defendant is correct in his argument that entrapment occurs when "investigative enforcement measures extend beyond a tolerable level when *by design* the government uses continued pressure [or] appeals to friendship or sympathy[.]" *People v Jamieson*, 436 Mich 61, 89; 461 NW2d 884 (1990). However, defendant's arguments are inconsistent with the evidence presented at the entrapment hearing. Initially, defendant overstates the depth of his friendship with Bennett as indicated by the evidence. According to defendant's testimony, he originally talked to Bennett, whom defendant believed was imprisoned for a drug offense, on the telephone while Bennett was in federal prison with defendant's cousin; they met "face to face" in April 2011. As the trial court aptly observed, defendant's testimony indicated that he had only sporadic and limited contact with Bennett from April 2011 until Bennett introduced defendant to Diego in November 2012. During that period, Bennett would often stop by defendant's rental properties, they would have brief meetings, and they left the rental properties on occasion and ate together. Bennett had never been to defendant's primary residence, and defendant did not know where Bennett lived or much about his upbringing. Defendant described Bennett as an "acquaintance and borderline friend." An acquaintance relationship is not sufficient to support a defendant's claim of entrapment. *People v Juillet*, 439 Mich 34, 66-67; 475 NW2d 786 (1991). In addition, defendant's testimony that he ultimately agreed to participate in the drug transaction because he needed the money to save his West Bloomfield residence suggests that he was not motivated because of his friendship with Bennett, but by his own opportunity for profit.

Regarding Bennett's alleged relentless pressuring, defendant testified that Bennett approached him about obtaining drugs in April 2012, and continuously pressured him until he finally agreed in November 2012. Defendant explained that Bennett first broached the subject by asking a general question about where to obtain drugs to a group of people who were at one of defendant's rental properties. Thereafter, Bennett continued to ask defendant about participating in a drug deal whenever he stopped by defendant's properties. As the trial court relevantly observed, defendant "didn't have to tell Mr. Bennett where [he] was located when Mr. Bennett would call and want to see him, especially after the discussions of—of dealing in drugs came about." Defendant's own testimony established that he chose to expose himself to the allegedly drug-dealing Bennett, "a borderline friend," which belies his claim that he was under unwanted, persistent pressure to participate in a drug deal.

Furthermore, after agreeing to participate in the drug deal, defendant met Bennett and Diego at a restaurant and discussed the drug transaction. Notably, defendant brought more than $230,000 for the drug deal (while, according to defendant, Bennett contributed $39,000), Bennett left shortly after introducing defendant to Diego, and Bennett did not attend any further meetings between defendant and Diego. In the recorded interactions that followed, defendant was observed and heard discussing the purity of the drugs with Diego, being shown drugs in a hidden compartment in a van, seeking to purchase a greater quantity, contacting Diego, and inviting Diego to transact the drug deal at defendant's residence. A special agent for the Drug

Enforcement Administration, who observed the interactions, testified that defendant did not appear to be nervous during the meetings and phone conversations, and it did not appear that this was defendant's first time being involved in a drug transaction. The evidence further showed that defendant voluntarily met with Diego, acted of his own free will, and was never threatened. Consequently, the record does not support defendant's claim that, through an informant, the police placed undue pressure on him to buy drugs. It supports the trial court's finding that defendant was a willing participant.

Defendant's suggestion that his opportunity to save his primary residence was a sufficient inducement to commit the crime also lacks merit. Defendant testified that the drug deal would provide him an additional $90,000 to help save his primary residence. The evidence disclosed, however, that defendant owned numerous rental properties, including a hall and several rental houses, but he claimed to be unaware of any of the values of those properties. He admitted that, for various reasons, he did not put any of those properties up for sale. Moreover, as the trial court found, "if his sole purpose was to keep his house from being foreclosed upon, one wonders why he couldn't work with the bank with a substantial payment [more than $230,000] toward his mortgage to save his home." Defendant and a witness also testified that defendant gave the witness a substantial amount of money to invest in a shrimp business during this period that he was in danger of losing his house.

In sum, defendant failed to establish by a preponderance of the evidence that either Bennett or Diego placed excessive pressure on him, that Bennett made a sufficient emotional plea to induce him to engage in the criminal activity, or that a friendship between defendant and Bennett was otherwise exploited to induce defendant to commit the crime. Further, no excessive consideration was provided to defendant. The police actions were insufficient to induce or instigate an otherwise unwilling average person, similarly situated to defendant, to commit the crime. Rather, the facts indicate that defendant was simply offered an opportunity to commit the crime, which is insufficient to support a finding of entrapment. *Johnson*, 466 Mich at 498. Consequently, the trial court did not clearly err in finding that defendant was not entrapped.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that the trial court erred by denying his motion for a new trial based on ineffective assistance of counsel. Defendant argues that defense counsel was ineffective for recommending that defendant waive his right to a jury trial. We disagree.

We review a trial court's decision on a motion for a new trial for an abuse of discretion. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). A claim alleging ineffective assistance of counsel presents a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Questions of law are reviewed de novo, and a trial court's findings of fact, if any, are reviewed for clear error. *Id.* To establish ineffective assistance of counsel, defendant first must show that counsel's performance was below an objective standard of reasonableness. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). Second, defendant must show that, but for counsel's deficient performance, it is reasonably probable that the result of the proceeding would have been different. *Id*. at 290.

A criminal defendant has the ultimate authority to make certain fundamental decisions regarding his case, including the decision whether to waive a jury. *Jones v Barnes*, 463 US 745, 751; 103 S Ct 3308; 77 L Ed 2d 987 (1983). The record shows that defendant's jury waiver complied with MCR 6.402(B), and was knowing and voluntary. Defendant acknowledged during the *Ginther*[2] hearing that he was questioned about his decision to waive a jury to ensure that it was a voluntary decision. Defense counsel testified that he explained "exactly" what a jury waiver meant to defendant. The colloquy between defendant and defense counsel during the waiver proceeding reveals that defendant understood his right to a jury trial, including the difference between a bench and jury trial, and voluntarily waived that right. Specifically, defendant acknowledged his understanding that, by waiving his right to a jury, "the Judge will be the fact finder and will make all the findings necessary[.]" Thus, the record belies defendant's claim that he would not have waived his right to a jury had he known that it meant that the trial court would be the trier of fact.

The decision to recommend a jury or bench trial is within the purview of trial strategy, *People v Davenport (After Remand)*, 286 Mich App 191, 197; 779 NW2d 257 (2009), which this Court does not second-guess. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Defendant claims, however, that defense counsel's advice was improperly based on his lack of preparedness to proceed to trial. Defendant testified that on the first day of the entrapment hearing, defense counsel told him that he was "get[ting] a bench trial" because counsel was not prepared to proceed to trial immediately after the entrapment hearing and needed to "buy [] more time." In contrast, defense counsel testified that he had strategic reasons for recommending a bench trial and, had trial started immediately, he "would have been prepared for the trial." Counsel explained that he and defendant had discussed that there was only one defense to the charges, which was entrapment, and that the entrapment issue could not be argued at trial. Counsel advised defendant that if he did not prevail at the entrapment hearing, defendant should immediately appeal the decision. A stipulated-fact bench trial was the most expeditious in that regard, especially given that "the prosecution had obviously overwhelming evidence" against defendant. In counsel's opinion, it "would have been a bit of a charade and a waste of time to impanel and go through a jury[.]" According to defense counsel, defendant understood that he lacked any other defense, knew that he would likely be convicted at trial, agreed with counsel's strategy, and never expressed any dissatisfaction with counsel's representation.

As the trial court below observed, resolution of this claim depended on how the court resolved the conflicting accounts of defense counsel and defendant. The trial court determined that defendant was not credible. This Court gives deference to a trial court's superior ability to judge the credibility of witnesses who appeared before it. *People v Farrow*, 461 Mich 202, 209; 600 NW2d 634 (1999). Moreover, as the trial court observed, other aspects of the record supported defense counsel's testimony. The parties' testimony discloses that defense counsel, who was defendant's fifth attorney, agreed to represent defendant with full knowledge that a trial was imminent. Although trial was forthcoming, both the prosecutor and defense counsel advised the court that, at the time of the entrapment hearing, neither had information that the trial was

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

scheduled to immediately follow the entrapment hearing. Therefore, defense counsel would not have had any reason to make that representation to defendant. In addition, upon filing his appearance, defense counsel requested and was granted an adjournment to prepare for the entrapment hearing. As the trial court noted, the record reveals that defense counsel was present and prepared for the three-day entrapment hearing and much of the same evidence and testimony from the entrapment hearing presumably would be presented at trial. In light of this record, and affording deference to the trial court's superior ability to evaluate credibility, we reject defendant's claim that he agreed to forego his right to a jury trial because defense counsel told defendant that he was not prepared to proceed with a jury trial. Rather, the decision was a tactical choice, which this Court will not second-guess. *Russell*, 297 Mich App at 716.

Defendant complains that by recommending a bench trial, defense counsel improvidently allowed defendant's testimony at the entrapment hearing, wherein defendant admitted his involvement in the drug offense, to be available to the same judge who tried the case. Contrary to what defendant argues, however, defense counsel did not stipulate to the admission of defendant's testimony at trial, and the record discloses that it was not admitted or considered at trial. The trial court expressly stated that it did not consider defendant's entrapment hearing testimony at trial, and that its determination of defendant's guilt was based solely on the testimony, facts, and exhibits that were admitted at the trial. The trial court also recognized the prohibition against considering a defendant's testimony at an entrapment hearing as substantive evidence. In a bench trial, it is presumed that the trial court can ignore inadmissible evidence when rendering its decision. *People v Taylor*, 245 Mich App 293, 305; 628 NW2d 55 (2001) (citation omitted). A review of the trial court's findings of fact and conclusions of law at the bench trial establishes that defendant's entrapment hearing testimony did not affect the trial court's verdict, which instead was clearly based on the evidence properly presented at trial.

In sum, under the circumstances, defense counsel's decision to recommend a bench trial was within the purview of trial strategy, *Davenport (After Remand)*, 286 Mich App at 197, and did not fall below an objective standard of reasonableness, *Armstrong*, 490 Mich at 289-290. "The fact that trial counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

## III. SCORING OF OFFENSE VARIABLES

Lastly, defendant argues that the trial court improperly scored OV 14 and OV 19 of the sentencing guidelines. Again, we disagree. When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

### A. OV 14

MCL 777.44(1)(a) directs a score of 10 points if "[t]he offender was a leader in a multiple offender situation." The entire criminal transaction should be considered. MCL

-6-

777.44(2)(a). The evidence indicates that defendant arranged a large drug transaction with a police informant. Lamar Kendrick accompanied defendant to the prearranged location for the buy. Kendrick remained in the car with the keys and the purchase money. Another person, Jay Smith, was at defendant's house, waiting for him to return with the drugs so that Smith could purchase a portion. The evidence supports the trial court's finding that more than one offender was involved in this criminal episode, and that defendant, the person who negotiated the transaction, was the leader. Therefore, the trial court did not err in assessing 10 points for OV 14.

### B. OV 19

OV 19 must be scored at 10 points if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49. In assessing points under OV 19, a court may consider the defendant's conduct after the completion of the sentencing offense. *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010). A defendant interferes with the administration of justice by "oppos[ing] so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). This Court has specifically recognized that a defendant's conduct of "fleeing from police contrary to an order to freeze," is sufficient to support a score of 10 points under OV 19. *Id.* at 343-344.

In this case, there was evidence that after defendant put the undercover van in reverse to leave, a detective stopped the van with a remote control kill switch and pulled the police vehicle behind the van. The detective and other officers were in fully marked police gear. Defendant exited the vehicle and "attempted to run approximately twenty feet" into "a berm, a grassy area." The detective identified himself as a police officer, ordered defendant to the ground, pulled his weapon, and "again ordered to the ground, which he *finally* complied." (Emphasis added.) Although defendant ultimately complied with the detective's command to stop and get on the ground, there was evidence that defendant initially disobeyed the directive, causing the detective to pull his weapon and "again" order defendant to the ground. Given that defendant initially disregarded a direct order from the police, a preponderance of the evidence supports that he interfered with the administration of justice. *Id.* at 343-344. Accordingly, the trial court did not err in assessing 10 points for OV 19.

Affirmed.

/s/ Kathleen Jansen
/s/ David H. Sawyer
/s/ Karen M. Fort Hood