# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 12, 2016

Plaintiff-Appellee,

v

No. 325101
Wayne Circuit Court
LC No. 14-005519-FC

JALEN MICHAEL YELDER,

Defendant-Appellant.

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant was convicted, following a bench trial, of four counts of assault with intent to commit murder, MCL 750.83, carrying a weapon with unlawful intent, MCL 750.226, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 14 ¼ to 22 years' imprisonment for each assault with intent to murder conviction, two to five years' imprisonment for carrying a weapon with unlawful intent, and two years' imprisonment for felony-firearm. Defendant now appeals by right. We affirm defendant's convictions but remand for the ministerial task of correcting defendant's judgment of sentence.

This case arises from a shooting that took place when four young men, Devaunte McKinney, Dwight Mahone, Aaquil Cleary, and Willie Quarles, drove to a banquet hall in Detroit to attend a graduation party. After they arrived, they stood in the street outside of the hall speaking with friends inside of a parked car. The group of friends eventually noticed three men walking toward them down the street. When the three men were approximately 25 feet away, they began shooting and McKinney, Mahone, Cleary, and Quarles ran toward a CVS nearby to seek shelter. Cleary, McKinney, and Mahone were all shot several times before making it inside the CVS. McKinney, Mahone, Cleary, and Quarles all testified at defendant's trial and both Cleary and McKinney identified defendant as one of the shooters.

In both his brief on appeal and standard 4 brief, defendant argues that he was denied the effective assistance of counsel. Defendant contends that his counsel's performance fell below an objective standard of reasonableness when he 1) failed to consult with or retain an expert regarding the unreliability of eyewitness testimony, 2) failed to use testimony from the preliminary examination regarding the identification procedure during the live lineup to impeach Cleary at trial, and 3) failed to present his alibi defense. We disagree.

-1-

To preserve a claim of ineffective assistance of counsel, a defendant must make a motion for a new trial or an evidentiary hearing with the trial court. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant never moved for a new trial or a *Ginther*[1] hearing in the trial court. Thus, this issue is unpreserved. Defendant did file a timely motion to remand for a *Ginther* hearing with this Court concerning his counsel's ineffectiveness. However, that motion was denied.[2] "When a defendant did not move in the trial court for a new trial or an evidentiary hearing, this Court's review is limited to mistakes apparent from the record." *Id*.

The United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013), citing *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Nix*, 301 Mich App at 207. It is presumed that trial counsel used effective trial strategy, and a defendant has a heavy burden to overcome this presumption. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

Defendant first asserts that he was denied effective assistance of counsel when defense counsel failed to consult with or retain an expert witness to explain the unreliability of eyewitness identification. We disagree. The decision "to call or question witnesses is presumed to be [a] matter[] of trial strategy" and will only constitute ineffective assistance when it deprives defendant of a substantial defense. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (citation omitted).

In support of his claim, defendant attaches the affidavit of cognitive psychologist Colleen M. Seifert, in which she avers that she would have been willing to testify regarding "problematic factors [that] were present in the eyewitness identification testimony in this case." However, because defendant did not make a record in the trial court about this in connection with a motion for a new trial or an evidentiary hearing, the affidavit is not a part of the lower court record. This Court's review is limited to the facts contained on the record, *Heft*, 299 Mich App at 80, and, thus, this affidavit cannot be properly considered.

However, even if the affidavit were properly submitted, defendant has failed to overcome the presumption that his counsel's decision not to call an expert witness was trial strategy. This was a bench trial where the judge, sitting as the trier of fact, determined the credibility and reliability of witnesses. *People v Kanaan*, 278 Mich App 594, 621; 751 NW2d 57 (2008). "A judge, unlike a juror, possesses an understanding of the law which allows him to ignore such

---

[1] See *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Yelder*, unpublished order of the Court of Appeals, entered September 11, 2015 (Docket No. 325101).

errors and to decide a case based solely on the evidence properly admitted at trial." *People v Taylor*, 245 Mich App 293, 305; 628 NW2d 55 (2001).

At trial, Mahone testified that he had no memory of the shooting, and Quarles admitted that he did not see the faces of the shooters. However, Cleary identified Vaughn and defendant as two of the shooters to the police from a photograph, and later also identified defendant in a live lineup. Additionally, McKinney testified that when the shooters were approximately 30 feet away he saw defendant's face, and stated that he recognized defendant because they had attended the same high school. Defense counsel cross-examined both Cleary and McKinney in an effort to illustrate the unreliability of their identifications of defendant as the shooter. Defense counsel elicited testimony from Cleary regarding the fact that he did not initially identify defendant in his statement to police and that he had originally told police that the shooter was approximately 5 feet, 8 inches to 5 feet, 9 inches tall, while defendant is only 5 feet, 4 inches tall. Additionally, defense counsel cross-examined Cleary regarding the fact that his identification of defendant as the shooter stemmed from a photograph shown to him by a person who had not even been present on the night of the shooting. Through cross-examination, defense counsel also demonstrated that Cleary had not been previously acquainted with defendant before the night of the shooting aside from seeing him in pictures on social media, and that Cleary did not even know defendant's name when he identified him to police. Defense counsel cross-examined McKinney in a similar manner and established that McKinney had initially told the police that he had never seen the shooter before, that the shooter was approximately 5 feet, 11 inches to 6 feet tall, and that the shooter had a "medium" complexion while defendant had a "dark" complexion. Additionally, defense counsel elicited testimony from McKinney that he had last seen defendant two years before the shooting.

Thus, the record reveals that defense counsel effectively cross-examined Cleary and McKinney regarding the discrepancies in their identifications of defendant and the grounds for regarding their identifications of defendant as the shooter as questionable. Defense counsel may have concluded that an expert witness would have been cumulative. Defense counsel arguably could have presented expert testimony explaining the unreliability of eyewitness identification to buttress the misidentification defense, however, counsel's failure to do so did not render his performance below an objective standard of reasonableness. See *People v Cooper*, 236 Mich App 643, 658; 601 NW2d 409 (1999) (finding the defendant did not overcome the presumption that his counsel's decision not to call an expert witness was trial strategy where counsel "elicited apparent discrepancies and arguable bases for regarding [the] identification of defendant as the shooter to be suspect."). Accordingly, we reject defendant's claim.

Defendant next argues that he was denied the effective assistance of counsel when defense counsel failed to use Cleary's testimony from the preliminary examination regarding the identification procedure during the live lineup to impeach him at trial. We disagree. Decisions regarding how to question witnesses are presumed to be matters of trial strategy. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id.* at 411 (citation omitted).

Defendant argues that, at the preliminary examination, "Cleary repeatedly testified that the officer told him to pick number three." At the preliminary examination, Cleary testified that

he attended a lineup at the Detroit Detention Center, identified a person who was present the night of the shooting, and informed police. He also stated that the police did not tell him who to identify. He received a form when he viewed the lineup, which he completed. Regarding the form, Cleary testified:

> *Q.* What did you write and tell the officer on that day?
>
> *A.* That the detective told me to pick out the lineup, pick number three and tell me to write --
>
> *Q.* I can't hear.
>
> *A.* He told me to pick out the lineup and to pick number three. He told me to write that down number did (sic) and I wrote, "Walked up with the black hoody and pulled out a gun and start shooting."

Defendant implies that this testimony leads to the inference that Cleary's identification was aided by police involvement and was, therefore, not credible.[3]

At trial, Cleary testified that during the live lineup the police told him to "pick out the one you think it, that you see that was in the picture." Cleary later clarified that the police did not tell him who to choose from the lineup, and that he picked the person that he "remember[ed] seeing that night." In fact, at trial, Cleary testified several times that the police did not tell him who to choose, and that he had picked defendant out of the lineup because that is who he saw during the shooting.

Under MRE 801(d)(1)(A), defense counsel was entitled to attack the credibility of Cleary's identification by referring to Cleary's statements from the preliminary examination, which were inconsistent with his trial testimony. However, instead, defense counsel chose to attack the credibility and reliability of Cleary's identification by impeaching Cleary's trial testimony with the statement he made to police after the shooting that contained a description of the shooter that was inconsistent with defendant's physical appearance. The record reveals that defense counsel used the police statement to effectively cross-examine Cleary regarding the credibility and reliability of his identification of defendant.

While defense counsel arguably could have also attempted to attack the credibility and reliability of Cleary's identification with his preliminary examination testimony, counsel's failure to cross-examine Cleary regarding every contradictory aspect of his testimony and prior

---

[3] We note that when Cleary's statement is read in context of his entire preliminary examination testimony, there is some ambiguity. Prior to saying "He told me… to pick number three," Clearly had testified that he saw the person present at the shooting and indicated to police who that person was. While clarification of Cleary's statement at the preliminary examination certainly would have been helpful, we take the statement at face value for the purposes of this appeal.

-4-

statements does not constitute ineffective assistance of counsel. Cleary was the complainant who initially identified defendant as the shooter and brought the photograph of defendant to the police, which lead to defendant being involved in the live lineup to begin with. Thus, defense counsel may have reasonably concluded that attempting to attack the credibility of Cleary's identification by suggesting that he selected defendant from the lineup only because the police told him to would have been unpersuasive.

Defendant also argues that defense counsel was ineffective by failing to present his alibi defense. We disagree. At defendant's arraignment, defense counsel stated that he "would be thoroughly investigating the alibi on this case." However, at subsequent pretrial proceedings, defense counsel indicated that he had a "witness problem." Defense counsel explained that "[o]ne of the witnesses landed in Oakland County Jail and there was also a name problem. So it was hard to track him down until this morning. But we may be able to do without him. And I am going to see." At trial, after the prosecution rested, defense counsel stated, "the defense filed an alibi defense. And, again, discussed it with [defendant]. And for strategic reasons, at this time, I believe it's our decision not to go ahead with the alibi defense, and we'll withdraw it." When asked if that was correct, defendant stated, "yes." Defendant also never objected to his counsel's waiver of an alibi defense at any other point during trial, or at sentencing.

Thus, defendant waived this claim of error by personally expressing satisfaction with defense counsel's decision to forgo the alibi defense. As stated in *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011), "[t]his Court has defined waiver as "the intentional relinquishment or abandonment of a known right. One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." Accordingly, because the record indicates that defendant acquiesced in the decision not to present an alibi defense, any potential error was extinguished, and he may not now predicate a claim of error on that decision.

Last, defendant argues that, because the predicate felony for his felony-firearm charge was assault with intent to murder, the trial court erred when it ordered that his sentence for carrying a weapon with unlawful intent be consecutive to his felony-firearm sentence. The prosecution concedes this error, and we agree. See *People v Clark*, 463 Mich 459, 463-464; 619 NW2d 538 (2000).

We affirm defendant's convictions and sentences, but remand so that the judgment of sentence can be amended to reflect that defendant's sentence for carrying a weapon with unlawful intent run concurrent to his sentence for felony-firearm. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood