*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* TODD MARTIN HOFFMAN, JR., Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 10, 2019

Petitioner-Appellee,

v

No. 345923
Wayne Circuit Court
Family Division
LC No. 16-522509-DL

TODD MARTIN HOFFMAN, JR.,

Respondent-Appellant.

---

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

In this juvenile delinquency case, respondent appeals as of right the order of disposition committing him to Wayne County Children and Family Services for placement and care following the trial court's adjudication of respondent as responsible for third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a), for sexually abusing TW. We affirm.

## I. BASIC FACTS

In the late afternoon of an unspecified day in the summer of 2016, then 13-year-old TW was alone in her family's apartment watching television in the living room. Respondent, a friend of TW's older brother, DP, came to the apartment and asked if anyone was home. TW told respondent that she was the only person in the apartment. He proceeded to push her down onto a mattress on the floor in the living room. Then, respondent pulled down TW's pants, pulled down his own pants, flipped TW onto her stomach, and penetrated her with his penis. TW screamed and unsuccessfully attempted to get respondent off of her. After respondent finished penetrating TW, he left without saying a word. When TW went to the bathroom to clean herself up she noticed that she was bleeding. Shortly after this sexual assault, TW developed a rash in her "lower area," but was afraid to disclose it to her mother.

-1-

TW had previously been sexually abused by a family member,[1] and that report of abuse upset her mother. Because TW's mother considered respondent to be "like a son," TW was afraid to report respondent's sexual assault because she did not know what her mother's reaction would be. Additionally, TW blamed herself for the assault, believing she could have fought harder to prevent it.

Within a couple of months of the sexual assault by respondent, TW was removed from her mother's care and placed in a facility. At the facility, TW participated in "journaling" with her counselor; the two would communicate back and forth by writing in a notebook. TW disclosed the sexual abuse that occurred in her past, and the counselor shared the information with TW's therapist who reported the incident to the police. Also after being placed in the facility, TW disclosed the rash, and a medical evaluation revealed that TW had chlamydia, a sexually transmitted disease. She believed that respondent gave her the disease because her symptoms occurred after his assault upon her.

Detroit Police Officer Brian Herndon received a referral from child protective services (CPS) to investigate TW's claims. He scheduled a "Kids Talk" interview for TW, but noted that he was concurrently investigating a case involving TW's brother, DP. During the interview, TW disclosed information regarding DP and "Todd." Officer Herndon investigated "Todd" to discover his full name and his location and requested a petition be filed against respondent. Officer Herndon learned that TW's brother, DP, began abusing her at a young age, it lasted for several years, and he pleaded guilty to the sexual abuse. Following trial, the court found beyond a reasonable doubt that respondent was responsible for third-degree CSC. From this decision, respondent appeals.

## II. PROSECUTORIAL MISCONDUCT

Respondent first contends that the prosecutor improperly bolstered TW's credibility by eliciting testimony from Officer Herndon regarding DP's sexual abuse to portray TW as "a perpetual victim," information designed to "tip the scales" in her favor where there was no corroborating witnesses or physical evidence. We disagree.

To preserve an issue for appellate review in juvenile delinquency proceedings, the issue must be raised in the trial court. *In re Hildebrant*, 216 Mich App 384, 388; 548 NW2d 715 (1996). Additionally, "to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Respondent failed to argue at trial that the prosecutor's comments were improper and concedes that the issue is unpreserved on appeal.

"Generally, a claim of prosecutorial misconduct is a constitutional issue that is reviewed de novo, but a trial court's factual findings are reviewed for clear error." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). Unpreserved issues, however, are reviewed for plain error. *In re Tiemann*, 297 Mich App 250, 257; 823 NW2d 440 (2012), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

---

[1] Although TW did not specifically identify DP as her assailant, she noted that the incident was upsetting for her mother because it involved a "son" and "daughter."

To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. [*Carines*, 460 Mich at 763 (quotation marks, citations, and brackets omitted).]

The appellant bears the burden of persuasion with respect to prejudice. See *id*. at 763 ("It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.") (quotation marks and citation omitted).

Because juvenile delinquency proceedings are analogous to criminal proceedings, "this Court routinely looks to the adult criminal code and cases that interpret it so long as they are not in conflict or duplicative of a juvenile code provision." *In re Kerr*, 323 Mich App 407, 414; 917 NW2d 408 (2018) (citation and quotation marks omitted). "Generally, to prevail on a claim of prosecutorial misconduct, a defendant must show that he was denied a fair and impartial trial." *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). A prosecutor's comments should be considered in this context, but "[a] defendant is entitled to a fair trial, not a perfect one." *Id*. Prosecutorial comments must be viewed "in light of defense arguments and the relationship they bear to the evidence admitted at trial," *Brown*, 279 Mich App at 135 (citation omitted), and the propriety of such comments is dependent on "the particular facts of each case," *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003) (citation omitted). Because "[t]he goal of a defense objection to improper remarks by the prosecutor is a curative instruction," appellate review of such remarks is generally precluded where the defendant failed to request a curative instruction "unless the prejudicial effect of the remark[s] was so great that it could not have been cured by an appropriate instruction." *People v Cross*, 202 Mich App 138, 143; 508 NW2d 144 (1993) (citations omitted); see also *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994) (noting that a defendant's failure to timely object to improper remarks by the prosecution deprives the trial court of an opportunity to administer a curative instruction). Likewise, reversal is unwarranted where a "curative instruction could have alleviated any prejudicial effect." *Callon*, 256 Mich App at 329-330 (citations omitted). Finally, prosecutorial misconduct "cannot be predicated on good-faith efforts to admit evidence." *Solloway*, 316 Mich App at 203.

Respondent submits prosecutorial misconduct occurred by Officer Herndon's testimony because it improperly bolstered and made TW's testimony more credible. We disagree. Officer Herndon testified regarding the request by CPS to conduct an investigation, his concurrent investigation into allegations against DP, and the reason he began to investigate respondent. Specifically, after TW was removed from her family and placed in a facility, she received counseling and medical treatment. Her treatment revealed she was infected with chlamydia, a sexually transmitted disease, which TW associated with the sexual assault by respondent because the symptoms appeared in proximity to the act. During the journaling process with her counselor, TW disclosed the sexual abuse that prompted the CPS

report to the police and the Kids Talk[2] interview. Because TW only referred to respondent as "Todd," Officer Herndon was tasked with learning his full name and location.

There is no indication that the prior sexual abuse of TW committed by DP was improperly admitted by the prosecutor to bolster TW's credibility. Rather, the testimony about the disclosure of the prior sexual abuse was relevant to provide a foundation with regard to how the police investigation later included respondent. The record lacks any argument or insinuation by the prosecutor that other allegations of sexual abuse that resulted in a guilty plea by DP rendered TW's allegations against respondent credible. The prosecutor also failed to argue that TW was a "perpetual victim." Rather, in closing argument, the prosecutor noted that TW failed to report respondent's sexual assault in proximity to its occurrence and could not recall specific details, such as the exact date of the assault and her clothing at the time. The prosecutor attributed the delay in reporting and the inability to recall specific details to the lack of family support following the prior abuse disclosure, and did not attempt to bolster the credibility of the allegations against respondent by a prior unrelated sexual assault committed by a family member. Additionally, there is no indication that the officer's testimony was elicited in bad faith. *Solloway*, 316 Mich App at 203. Thus, when the prosecutor asked Officer Herndon whether respondent was mentioned in a Kids Talk interview conducted to investigate DP, it was not prosecutorial misconduct. *Bennett*, 290 Mich App at 477 (the prosecutor's questioning did not constitute misconduct "but merely provided a context for the jury of the officer's investigation and how it eventually led to defendants.")

Finally, even if we assume that the prosecutor elicited this testimony to improperly bolster the credibility of TW, the testimony was disclosed in a bench trial. "A judge, unlike a juror, possesses an understanding of the law which allows him to ignore [evidentiary] errors and to decide a case based solely on the evidence properly admitted at trial." *People v Taylor*, 245 Mich App 293, 305; 628 NW2d 55 (2001) (quotation marks and citation omitted). As such, the trial judge is presumed to have found respondent responsible for CSC-III on the basis of the evidence, not the prosecutor's comments. Furthermore, even if we assume that the trial judge failed to disregard the prosecutor's impropriety, any error was not clear and obvious. Consequently, the error was not plain. See *Carines*, 460 Mich at 763. Additionally, respondent has not shown that the prosecutor's comments affected the outcome of trial. This claim of error does not entitle respondent to appellate relief.

III. ADMISSION OF EVIDENCE

Next, respondent asserts that the trial court plainly erred by admitting irrelevant evidence that respondent's name was mentioned during a Kids Talk interview, while investigating DP, and by admitting irrelevant evidence about DP sexually abusing TW in the past. We disagree.

When preserved, this Court "review[s] for an abuse of discretion a trial court's decision to exclude evidence." *In re Kerr*, 323 Mich App at 411. Respondent concedes that the issue is

---

[2] Although respondent's counsel mentioned that he viewed the Kids Talk interview, and it is apparent from the record that the parties were aware of the content of the interview, it was not preserved in the lower court record.

unpreserved. Unpreserved issues are reviewed for plain error. *Carines*, 460 Mich at 763; *In re Tiemann*, 297 Mich App at 257.

"[T]he Michigan Rules of Evidence apply in juvenile-delinquency trials." *In re Kerr*, 323 Mich App at 413. "Generally, all relevant evidence is admissible at trial." *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *People v Martzke*, 251 Mich App 282, 293; 651 NW2d 490 (2002) (citation and quotation marks omitted). "Under this broad definition, evidence is admissible if it is helpful in throwing light on any material point." *Aldrich*, 246 Mich App at 114.

Under MRE 403, however, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "MRE 403 does not prohibit prejudicial evidence; rather, it prohibits evidence that is unfairly prejudicial. In essence, evidence is unfairly prejudicial when there exists a danger that marginally probative evidence might be given undue weight by the jury." *People v Dixon-Bey*, 321 Mich App 490, 513; 909 NW2d 458 (2017). Finally, "[t]he credibility of a witness is an issue that is of the utmost importance in every case." *People v McIntire*, 232 Mich App 71, 102; 591 NW2d 231, 246 (1998), rev'd on other grounds 461 Mich 147 (1999). See also *In re Dearmon*, 303 Mich App 684, 696; 847 NW2d 514 (2014) ("[e]vidence bearing on a witness's credibility is always relevant.").

Respondent argues that evidence of respondent's name being mentioned during a Kids Talk interview conducted during an investigation of DP was not relevant. The purpose of the Kids Talk interview was to explore the allegations of sexual abuse raised by TW to her counselor through journaling. Respondent assumes, without citation to the record, that the purpose of the interview was limited to an investigation of DP. However, TW testified that she used the notebook to disclose events that occurred "in her past," and identified "Todd" as an assailant, a disclosure that caused Officer Herndon to also investigate respondent. Thus, the evidence was relevant and in accordance with the reason for the interview.

Respondent also argues that evidence of DP sexually abusing TW in the past was not relevant, but prejudicial. We disagree. Again, TW testified that a prior report of sexual abuse was not acted upon by her mother. Upon discovering a medical condition, TW was scared to report it to her mother because of the consequences. Once removed from her home environment, TW reported the medical condition and eventually journaled her prior abuse by DP and respondent. Thus, the revelation of abuse by DP was relevant to show how the police investigation led to respondent. Further, because the admission of this evidence occurred in a bench proceeding where the trial judge presumptively possesses an understanding of the law and decides a case solely based on properly admitted evidence, *Taylor*, 245 Mich App at 305, this claim of error is without merit.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto