# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HENRY LEE SMITH,

        Defendant-Appellant.

UNPUBLISHED
January 26, 2017

No. 328247
Wayne Circuit Court
LC No. 14-003489-01-FC

Before: BECKERING, P.J., and SAWYER and SAAD, JJ.

PER CURIAM.

Defendant appeals his bench trial convictions of assault with intent to commit murder, MCL 750.83, felon in possession of a firearm, MCL 750.224f, carrying a concealed firearm, MCL 750.227(2), and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 25 to 45 years for the assault conviction, and 2 to 10 years each for the felon-in-possession and carrying a concealed firearm convictions, and a consecutive five-year term of imprisonment for the felony-firearm conviction. We affirm.

Defendant's convictions arise from the December 2013 shooting of Matthew Ridley, the victim, at a vacant house located at 2408 Meade Street in Detroit. The victim testified that he and defendant sold drugs together and that the two of them entered the vacant house to inspect it as a potential location for their operation. While the two of them were alone inside the house, the victim heard a gunshot, sustained a gunshot wound to the head, and fell to the ground. He testified that he saw defendant trying to conceal a gun before leaving the house. The victim survived the shooting but sustained brain damage that impaired his memory, for which he took medication.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

In both his principal brief on appeal and in a pro se Standard 4[1] brief, defendant challenges the effectiveness of his trial counsel. Because no evidentiary hearing was held, we

---

[1] Michigan Supreme Court Administrative Order, 2004-6, Standard 4.

limit our review of the ineffective assistance claims "to mistakes apparent on the record." *People v Williams*, 223 Mich App 409, 414; 566 NW2d 649 (1997). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Any factual findings are reviewed for clear error, but questions of constitutional law are reviewed de novo. *Id.*

To establish ineffective assistance of counsel, a defendant must demonstrate that (1) his counsel's performance fell below an objective standard of reasonableness and that (2) counsel's representation so prejudiced the defendant that he was deprived of a fair trial. *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). With respect to the prejudice aspect of this test, the defendant must demonstrate a reasonable probability that but for counsel's errors the result would be different. *Id*. at 312. The "defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011).

## A. CLAIMS RAISED IN DEFENDANT'S PRINCIPAL BRIEF ON APPEAL

In his principal brief, defendant argues that his trial counsel was ineffective when he failed to present the victim's medical records or an expert medical witness to testify regarding the victim's gunshot-caused memory issues. Defendant contends that trial counsel "should have at least had an expert examine the [victim's] medical records and actually present some evidence to support his Confabulation defense."[2] Defendant highlights that the victim offered contradictory statements regarding whether the assailant had a black or silver revolver, whether the victim saw a gun before or after the assault, whether he and defendant drove or walked to the vacant house, and victim's acknowledged memory difficulties since the assault.

At a pretrial hearing, the trial court addressed defense counsel's motion to appoint an expert witness to review approximately 2,500 pages of medical records from the victim's three-month hospitalization. Defense counsel stated that he had reviewed the records with his "skillful eyes," which had reviewed "medical records for years." Defense counsel reviewed the records for any indication that the part of the victim's brain that stores memory was affected by the gunshots to the victim's head. But defense counsel stated that his investigation was unfruitful, as there was no evidence that this pertinent part of the victim's brain "was destroyed, injured or harmed." The trial court denied the motion because an expert witness would have access to the same medical records of the victim that defense counsel already had reviewed, and nothing in the medical records established or suggested that the victim had "impaired memory issues or

---

[2] "Confabulation is a memory disorder that may occur in patients who have sustained damage to both the basal forebrain and the frontal lobes, as after an aneurysm of the anterior communicating artery. Confabulation is defined as the spontaneous production of false memories: either memories for events which never occurred, or memories of actual events which are displaced in space or time." Memory Loss & the Brain, *Glossary-Confabulation* <www.memorylossonline.com/glossary/confabulation.html> (accessed January 20, 2017).

recollection." Defense counsel intended to challenge and question the victim's ability to recall the assault "on the basis of simple knowledge and general information in the public domain, that certainly trauma like that to the brain would have some effect . . . on the memory of the victim."

In his brief on appeal, defendant fails to substantiate a factual basis that the victim's medical records tended to support a defense grounded in the victim's defective memory of the assault. In other words, defendant has failed to rebut defense counsel's assertion that there was nothing in the medical records to warrant the appointment of an expert witness. Thus, defendant's claim necessarily fails. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (observing that the defendant "has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel"). We further note that the record demonstrates that defense counsel extensively cross-examined the victim concerning the trauma to his brain, the victim's current medications, the circumstances of the shooting, the discrepancies between the victim's trial testimony and prior statements to the police concerning the assault, and the extent to which the victim felt certain regarding his identification of defendant as the assailant. Accordingly, defendant did not overcome the strong presumption that defense counsel pursued a reasonable trial strategy. See *Armstrong*, 490 Mich at 290; *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999) (explaining that "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy"). Moreover, assuming counsel's performance was deficient by not retaining an expert, defendant has failed to demonstrate how any such expert would have testified at trial. Without this evidence, defendant cannot show how the failure to procure an expert prejudiced him.

Defendant also argues that defense counsel was ineffective when he failed to "fully impeach" the victim at trial. Specifically, defendant claims that trial counsel failed to question the victim regarding the discrepancy between the victim's statements that he had seen defendant possessing a black or silver revolver and failed to question the victim regarding whether he knew where defendant lived in December 2013. But defendant recognizes that trial counsel successfully elicited the victim's testimony that he had mentioned seeing defendant possess both a black or silver revolver, "conflicts involving whether [the victim] was driven or walked to the scene of the incident," and the victim's admission "that his mind [and] memory is messed up."

Here, defense counsel questioned the victim concerning the following: the victim's use of a cane at the time of trial, the partial immobilization in the victim's left hand, the victim's comatose state for more than two weeks after the assault, the victim's couching of multiple direct-examination responses in the terms "to the best of [his] knowledge," whether marijuana use affected the victim's brain, and whether the victim used heroin. Counsel elicited the victim's acknowledgment that on "certain" matters, some reason existed why he could not "remember[] things as clearly as [he] might"; the victim "smoked marijuana every day" for an unspecified period; the victim took between 10 and 11 medications every day at the time of trial, including Amantadine to improve his brain functioning and pain medication; the day before the assault, some tension existed over a drug debt between defendant and the victim, but no tension existed on the day of the shooting; and the victim did not see defendant pull the trigger of the gun. Counsel repeatedly inquired of the victim whether he told anyone that he and defendant had walked to the vacant house on Meade, which the victim repeatedly denied, and counsel questioned the victim regarding his recollections of having driven to Meade.

We hold that defense counsel performed reasonably in highlighting the severity of the victim's brain injury, the many prescription medications that the victim was taking at the time of trial, the victim's concession that he could not recall some details of the assault, and eliciting the variations in details between the victim's trial testimony and prior statements to the police. At the trial court, counsel raised all of the inconsistencies in the victim's accounts of the assault, and all of the potential grounds for questioning the victim's memories of the assault. During defendant's opening statement and closing arguments, counsel also urged the trial court to acquit defendant of the charges because the victim's brain injury rendered suspect his identification testimony. In sum, the record does not support defendant's claim that trial counsel's cross-examination of the victim fell below an objective standard of reasonableness. Moreover, how to impeach a witness clearly is a matter of trial strategy, see *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999); *People v Flowers*, 222 Mich App 732, 737; 565 NW2d 12 (1997), which we will not assess with the benefit of hindsight, *Rockey*, 237 Mich App at 76-77.

## B. CLAIMS RAISED IN DEFENDANT'S STANDARD 4 BRIEF

Defendant complains that trial counsel was ineffective for recommending that defendant waive his right to a jury trial on the basis of the trial court's medical knowledge. Our review of the record reveals that defendant and trial counsel opted for a bench trial because the trial court might understand better than a jury the likelihood that the victim's brain injury had caused him to repeatedly misidentify defendant as the assailant. Counsel and defendant also chose a bench trial because of a sympathetic victim, and the trial court would be less likely than a jury to credit the victim's testimony on the basis of sympathy. We conclude that defendant has not overcome the strong presumption that selecting a bench trial in this case constituted sound trial strategy. See *Armstrong*, 490 Mich at 290; *People v Taylor*, 245 Mich App 293, 305; 628 NW2d 55 (2001) (observing that a "judge, unlike a juror, possesses an understanding of the law which allows him to ignore such errors and to decide a case based solely on the evidence properly admitted at trial") (quotation and citation omitted). The fact that the strategy was not successful does not render counsel ineffective. *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

Defendant also claims that trial counsel was ineffective when he failed to investigate the location of the victim's brain injury, the likelihood that the victim suffered from confabulation, and the likelihood that the many prescription drugs that the victim ingested during his recovery potentially caused confusion, disorientation, hallucinations, and psychosis. However, defendant ignores that counsel did in fact point out (1) the victim's identification of defendant was incorrect because of the victim's significant brain injury, (2) the injuries that the victim still suffered at the time of the trial impacted his memory, and (3) the inconsistencies in the victim's recollection of the assault. Furthermore, trial counsel questioned the victim at length regarding his brain injury, ongoing physical defects, inability to remember some circumstances surrounding the shooting, inconsistent statements the victim had provided to the police, and the many medications that the victim still used. Moreover, defense counsel elicited from the police officers who testified any potential inconsistencies between the victim's trial testimony and statements to the police. Defense counsel also reiterated during closing argument that the victim likely had misidentified defendant in light of his brain injury and the differences in the victim's descriptions of the assault. We hold that the record reveals that counsel reasonably impeached the victim regarding his capacity to remember the assault. Accordingly, defendant has not established ineffective assistance on counsel with respect to this issue.

Defendant also maintains that trial counsel was ineffective when he failed to present defendant's alibi witnesses. Before trial, defense counsel filed a notice of alibi that included witnesses Angie Anderson and Kimberly Smith. Neither Anderson nor Smith appeared for the first two days of trial, even though defendant assured their presence. On the second day of trial, defendant indicated that both witnesses were "sick," and the trial court adjourned the trial for four days to give the defense a chance to locate the alibi witnesses. On the third day of trial, Anderson and Smith failed to appear again. Defendant thereafter chose to testify and explained that on December 6, 2013, he had been visiting relatives and friends during the period of the alleged assault, and never saw the victim. We conclude that defendant has not overcome the strong presumption that counsel acted reasonably in attempting to present and establish the alibi defense. Moreover, there is nothing in the record to indicate how these alibi witnesses would have testified at trial. Accordingly, assuming defense counsel's performance fell below an objective level of reasonableness in not procuring the alibi witnesses for trial, defendant cannot establish the necessary prejudice element to support his claim of ineffective assistance because there is no evidence that the witnesses would have supported an alibi.

Defendant also contends that trial counsel was ineffective when he failed to object to the trial court's denial of counsel's motion for a directed verdict and failed to object to the trial court's decision to not allow defendant to testify about the victim's potential motivation for testifying against defendant based on hearsay grounds. In both instances, issues were raised for the trial court to address, and the court ruled on those issues. Any further objection after the court made its decision, without adding more information, would have served no purpose, as the purpose of raising an objection is to bring an issue to the court's attention so it can make a ruling. What defendant seems to truly challenge is the trial court's handing of those issues, which, as we discuss in sections II(A) and II(B), *infra*, was not erroneous.

Defendant additionally argues that trial counsel was ineffective when he failed to raise a constitutional objection to the prosecutor's failure to provide the defense with specific information regarding the victim's brain medication. For the reasons discussed in section II(C), *infra*, no prosecutorial misconduct occurred; thus, any objection would have been futile, and counsel is not ineffective for failing to raise a futile objection. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## II. REMAINING CLAIMS RAISED IN DEFENDANT'S STANDARD 4 BRIEF

### A. DIRECTED VERDICT

Defendant argues that the trial court erred when it denied his motion for a directed verdict because the victim acknowledged that he had an unreliable memory, and the victim gave highly improbable, inconsistent, and inconclusive testimony. In reviewing the trial court's denial of a motion for a directed verdict of acquittal, this Court considers all the evidence presented in the light most favorable to the prosecution to determine whether a reasonable fact-finder could find the defendant's guilt proven beyond a reasonable doubt. *People v Riley*, 468 Mich 135, 139-140; 659 NW2d 611 (2003).

The trial court properly denied defendant's motion for a directed verdict. Defendant's claim rests on the assertion that the victim was too unreliable to be believed. We reject this

view. First, defendant overemphasizes the victim's memory problems. At trial, the victim repeatedly conceded that he could not remember some details of the assault because he had experienced brain injuries. But the victim otherwise consistently described the pertinent facts surrounding the assault, including his recollection that only defendant accompanied the victim inside a prospective drug house, and only defendant stood near the victim when the victim felt pain in his head and heard a gunshot. Second, under the standard for directed verdict, we must view the evidence in a light most favorable to the prosecution. Thus, any discrepancies in the evidence are to be resolved in favor of the prosecution. *People v Wolf*, 440 Mich 508, 515; 489 NW2d 748 (1992), mod 441 Mich 1201 (1992). Accordingly, the victim's testimony was sufficient to allow the fact-finder to find beyond a reasonable doubt that defendant committed the charged crimes.

## B. HEARSAY OBJECTION

Defendant asserts that the trial court erred when it ruled, based on hearsay, that defendant could not testify regarding why the victim would falsely claim that defendant had shot him. We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

When defendant attempted to answer, "I didn't find this out until all of this happened, but a friend of mine got into a [sic] altercation . . . ," the trial court sustained the prosecutor's hearsay objection. When defendant started to give his response, it seemed evident that whatever defendant was about to say was not going to be based on personal knowledge but rather on someone else's personal knowledge, which was then relayed to defendant. This is contrary to MRE 602, which requires a witness to possess personal knowledge, and it also implicates MRE 801 and 802, which preclude the admission of out-of-court-statements to prove the truth of the matter asserted. Therefore, we conclude that the trial court acted within its sound discretion when it ruled that the testimony was not admissible.

## C. PROSECUTOR'S CONDUCT

Defendant argues that the prosecutor committed misconduct during defendant's preliminary examination when he presented "an unsworn out-of-court statement given by the [victim] and which inculpated" defendant. However, the statement was not hearsay because it was not offered to prove the truth of the matter asserted, MRE 801(c); instead, it was offered for impeachment purposes, which is acceptable under MRE 613(a). Moreover, assuming that the impeachment was improper at the preliminary examination, defendant is entitled to no relief in light of the trial court's entirely proper conduct of the bench trial, at which the prosecutor introduced evidence proving defendant's guilt beyond a reasonable doubt. See *People v Hall*, 435 Mich 599, 600-601; 460 NW2d 520 (1990) (holding that "an evidentiary deficiency at the preliminary examination is not ground for vacating a subsequent conviction where the defendant received a fair trial and was not otherwise prejudiced by the error").

Defendant also maintains that the prosecutor violated the duty to disclose evidence potentially favorable to the defense under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Specifically, defendant avers that the prosecution should have disclosed to defendant that the victim took medication to improve his memory at the time of the trial. We

review this unpreserved constitutional issue for plain error affecting defendant's substantial rights. *People v Carines*, 760 Mich 750, 764; 597 NW2d 130 (1999).

To establish that the prosecutor violated a defendant's due process rights in failing to disclose evidence, the defendant must establish that: (1) the state possessed and failed to disclose evidence; (2) the undisclosed evidence qualified as "either exculpatory or impeaching"; (3) a reasonable probability existed that, "had the evidence been disclosed to the defense," the outcome of the proceedings would have differed. *People v Chenault*, 495 Mich 142, 150-151; 845 NW2d 731 (2014). However, defendant has failed to establish that the prosecutor possessed before trial the specific information regarding the victim's brain medication. Furthermore, the fact that the victim was taking this medication was elicited by defense counsel at trial. Hence, the trial court, as the fact-finder, was fully aware that the victim was taking medication intended to improve the victim's memory, and defendant fails to show how him having this information any earlier would have impacted the trial. Accordingly, we reject this claim of error.

## D. CUMULATIVE ERROR

Defendant claims that the cumulative effect of the trial errors alleged above deprived him of a fair trial. Although the cumulative effect of several errors may be sufficient to warrant reversal even if the errors individually would not, when no errors exist, there can be no cumulative effect warranting reversal. *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). Here, because defendant has not demonstrated any individual errors that occurred during his trial, there can be no cumulative effect, and his claim necessarily fails.

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Henry William Saad