# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

v

ELAZAR ALEXANDER WITHERS,

          Defendant-Appellant.

UNPUBLISHED
May 15, 2018

No. 335253
Wayne Circuit Court
LC No. 16-003026-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

v

ELAZAR ALEXANDER WITHERS,

          Defendant-Appellant.

No. 336897
Wayne Circuit Court
LC No. 16-004902-01-FC

---

Before: CAMERON, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his convictions and sentences in two separate cases that were consolidated for a bench trial. In LC No. 16-003026-01-FC, the trial court convicted defendant of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c, armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court acquitted defendant of an additional charge of kidnapping, MCL 750.349. In LC No. 16-004902-01-FC, the trial court convicted defendant of armed robbery, felonious assault, MCL 750.82, and felony-firearm. The trial court sentenced defendant to 15 to 30 years' imprisonment for the CSC-I and armed robbery convictions, 7 to 15 years' imprisonment for the CSC-II conviction, and two to four years' imprisonment for the felonious assault conviction, to be served concurrently, but consecutive to two two-year terms of imprisonment for the felony-firearm convictions. We affirm.

-1-

Defendant's convictions arise from two separate incidents that occurred during the early morning hours of March 18, 2016, in Detroit. In each incident, defendant arranged to meet another man through an online website for gay men, and then robbed the man after meeting with him. Defendant also sexually assaulted one of the victims.

In LC No. 16-003026-01-FC, defendant arranged to meet with LB. After they met, LB got into defendant's vehicle and defendant drove to a residential area. Defendant eventually pulled over to the side of the street, revealed a gun, and then robbed LB of his possessions and forced him to remove most of his clothing. Defendant also repeatedly demanded LB to give his personal identification number (PIN) for his bank account. Defendant then took LB to a public park and sexually assaulted him. Afterward, defendant got back into his car and drove away, leaving LB at the park. Shortly thereafter, defendant was captured on a bank surveillance video using LB's bank card.

In LC No. 16-004902-01-FC, defendant arranged to meet with CH that same morning. After defendant got into CH's vehicle and the two talked for a short period, defendant pulled out a gun and told CH not to run or defendant would shoot him. CH ignored defendant's instructions and ran away, but CH left his personal belongings inside his vehicle, including the keys to the car. CH's car was later found, but his personal belongings were gone.

Defendant testified at trial and admitted meeting two men that morning through an online website to exchange sex for money, but he denied that he robbed or sexually assaulted anyone.

## I. DEFENDANT'S TRIAL

Defendant argues that he was denied a fair trial due to (1) the improper admission of other-acts evidence, contrary to MRE 404(b)(1); (2) the admission of irrelevant and prejudicial evidence that marijuana and a gun magazine were seized during a search of defendant's residence; (3) the admission of a police officer's written summary of defendant's police interrogation, which defendant maintains was inadmissible hearsay; (4) improper vouching by an interrogating police officer; and (5) the improper use of photographic arrays to identify him as the person who robbed and assaulted LB and CH when he was in custody. Defendant concedes that none of these issues were raised below, leaving them unpreserved. We review unpreserved issues for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and an error affects substantial rights if it is prejudicial, i.e., if it affects the outcome of the proceedings. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

Defendant further argues, however, that defense counsel was ineffective for not objecting or otherwise raising the foregoing issues in the trial court. Because defendant did not raise the issue of ineffective assistance of counsel in the trial court, our review of that issue is limited to mistakes apparent from the record. *People v Matuszak,* 263 Mich App 42, 48; 687 NW2d 342 (2004). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that counsel's representation so prejudiced defendant that he was denied his right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Tommolino,* 187

Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v Johnnie Johnson, Jr,* 451 Mich 115, 124; 545 NW2d 637 (1996).

## A. OTHER ACTS EVIDENCE

Defendant first argues that defense counsel was ineffective for failing to object to references at trial to a third incident, involving CM, which allegedly occurred on the same morning as the charged offenses. Defendant argues that all references to the incident involving CM were inadmissible under MRE 404(b)(1), which prohibits evidence of a defendant's "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith," but allows such evidence to be introduced for other, noncharacter purposes.

The record discloses that, although the prosecutor contemplated presenting CM's testimony at trial under MRE 404(b)(1), he never actually did so. However, references to the incident involving CM were made during defendant's police interview, which was introduced at trial. Before that interview was introduced, however, the parties advised the trial court that it contained references to a third case. The trial court agreed to disregard the inadmissible portions and consider only the portions that were relevant to the charged offenses.

There is a "presumption that a trial judge in a bench trial knows the applicable law." *People v Sherman-Huffman*, 466 Mich 39, 43; 642 NW2d 339 (2002). "A judge, unlike a juror, possesses an understanding of the law which allows him to ignore such errors and to decide a case based solely on the evidence properly admitted at trial." *People v Taylor*, 245 Mich App 293, 305; 628 NW2d 55 (2001) (citation omitted). In this case, defendant's interview did not contain any factual information relating to the alleged incident involving CM. Because defense counsel was aware that defendant was being tried before the court, which was capable of disregarding any inadmissible content of the interview and had expressly agreed to do so, defendant has not shown that it was necessary for defense counsel to further object to references to the alleged offense.

In addition, there is no merit to defendant's claim that he was denied his Sixth Amendment right to confrontation because he was unable to confront CM, his accuser. The protections of the Confrontation Clause apply "only to statements used as substantive evidence." *People v Fackelman*, 489 Mich 515, 528; 802 NW2d 552 (2011). "[T]he right of confrontation is concerned with a specific type of out-of-court statement, i.e., the statements of 'witnesses,' those people who bear testimony against a defendant." *Id*. No statements implicating defendant were introduced through defendant's interview. At most, officers only informed defendant that he was being accused by three men, not two. In addition, defendant was not charged with any offense involving CM, and the trial court expressly agreed to disregard the portions of the interview referring to this additional allegation. Accordingly, we reject this claim of error.

## B. IRRELEVANT EVIDENCE

Next, defendant argues that he was prejudiced by the introduction of evidence that a substance that appeared to be marijuana was observed during a search of defendant's residence,

-3-

and that a gun magazine was seized during the same search. Defendant argues that this evidence was irrelevant and unduly prejudicial, and it denied him a fair trial. We disagree.

As defendant observes, a police officer testified that a photograph of items seized during a search of defendant's residence showed a substance that appeared to be marijuana. However, the officer who tabulated the seized evidence did not list marijuana among the items seized during the search. Testimony also indicated that a gun magazine was seized during the search of defendant's residence. At trial, both victims described the firearm used by defendant as a revolver. Even if we accept defendant's argument that the testimony regarding marijuana and the gun magazine was not relevant under MRE 401, we are not persuaded that appellate relief is warranted. As indicated, defendant was tried before the trial court, which is presumed to know the applicable law and to have decided the case based solely on properly admitted evidence. *Sherman-Huffman*, 466 Mich at 43; *Taylor*, 245 Mich App at 305. Because the trial court was aware that no marijuana was actually seized from defendant's residence, and would have been aware that the magazine seized from defendant's residence was inconsistent with the type of weapon described by the victims, and because the trial court is presumed to have been able to disregard any potential prejudicial impact of this evidence, defendant has not demonstrated that the evidence affected his substantial rights, *Jones*, 468 Mich at 355, or that he was prejudiced by counsel's failure to object to the evidence, *Johnson*, 451 Mich at 124.

## C. HEARSAY EVIDENCE

Defendant argues that it was improper to admit a police officer's written summary of defendant's police interview because the writing was inadmissible hearsay. He further argues that defense counsel was ineffective for failing to object to this evidence. Although defendant argues that the written statement was not admissible under either MRE 803(6) (records of a regularly conducted activity) or MRE 803(8) (public records and reports), the prosecutor did not offer, and does not argue on appeal, that defendant's written statement was admissible under either of those rules. Instead, the applicable rule is MRE 801(d)(2), which excludes admissions of a party-opponent from the definition of hearsay. See *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). Defendant argues that the written statement was not admissible under MRE 801(d)(2) because he did not sign it or otherwise adopt it. However, there is no requirement under MRE 801(d)(2) that a statement be signed in order to be admissible, and the officer identified the written statement as a condensed version of defendant's statements during the interview.

Furthermore, to the extent that the unsigned written statement could be considered inadmissible, defendant has not demonstrated that appellate relief is required. First, by expressly agreeing to the admission of the written statement, defense counsel waived any claim of evidentiary error. *People v Carter,* 462 Mich 206, 215-216; 612 NW2d 144 (2000). A waiver extinguishes any error, leaving no error to review. *Id.* Second, defendant's actual recorded interview was admitted at trial and defendant has not challenged the admissibility of his statements during that interview. Because the trial court had the benefit of defendant's own recorded interview and the written statement was cumulative of the recorded interview, defendant cannot establish that he was prejudiced by defense counsel's failure to object to the written statement. *People v Duenaz*, 306 Mich App 85, 97; 854 NW2d 531 (2014).

## D. VOUCHING FOR THE COMPLAINANTS' CREDIBILITY

Next, defendant argues that he was denied a fair trial because a police officer's comments during his recorded interview improperly vouched for the credibility of the complainants. He also argues that defense counsel was ineffective for not objecting to the officer's comments. We disagree.

In *People v Musser*, 494 Mich 337, 353-354; 835 NW2d 319 (2013), the Court placed restrictions on the admissibility of an interrogator's comments during an interview, stating:

> [W]e hold that where the proponent of the evidence offers an interrogator's out-of-court statements that comment on a person's credibility for the purpose of providing context to a defendant's statements, the interrogator's statements are only admissible to the extent that the proponent of the evidence establishes that the interrogator's statements are relevant to their proffered purpose. See MRE 401. Even if relevant, the interrogator's statements may be excluded under MRE 403 and, upon request, must be restricted to their proper scope under MRE 105. Accordingly, to ensure a defendant's right to a fair trial, trial courts "must vigilantly weed out" otherwise inadmissible statements that are not necessary to accomplish their proffered purpose. *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998). To hold otherwise would allow interrogations laced with otherwise inadmissible content to be presented to the jury disguised as context.

In this case, the challenged portions of defendant's interview did not involve any direct vouching for the credibility of the complainants, but instead involved statements by an officer that he believed that defendant was involved in or committed the offenses. To the extent that there were grounds to object to some of the officers' comments, defendant has not demonstrated that counsel's failure to object affected defendant's substantial rights or that defendant was prejudiced by counsel's failure to object. Again, defendant was tried before the court, not a jury. The trial court is presumed to know the applicable law and to have decided the case based solely on properly admitted evidence. *Sherman-Huffman*, 466 Mich at 43; *Taylor*, 245 Mich App at 305. Nothing in the record suggests that the trial court considered the officers' comments. On the contrary, immediately before the interview was introduced, defense counsel requested that the trial court not consider the officer's commentary, and the trial court agreed to only consider defendant's responses to the questions, not the questions themselves. Accordingly, defendant is not entitled to appellate relief.

## E. PHOTOGRAPHIC ARRAYS

Defendant also argues he was denied his right to a fair trial when the police conducted photographic arrays with LB and CH, although he was already in custody and could have participated in a corporeal lineup. We disagree.

Our Supreme Court has long held that "identification by photograph should not be used where the accused is in custody." *People v Lee*, 391 Mich 618, 624; 218 NW2d 655 (1974). We acknowledge that the presentence investigation report (PSIR) indicated that a photographic

lineup was conducted because a corporeal lineup was not possible. However, the PSIR does not state why that was the case, and the record is not entirely clear as to when defendant was placed in custody as it concerned the offenses against each of the three original complainants. According to the PSIR, defendant was only arrested and in custody as to the incident against CM at the time LB and CH identified defendant in the photographic arrays. The report indicated that defendant was arrested on March 21, 2016, as it concerned complainant CM.[1] As it related to LB and CH, the report indicated defendant was arrested on March 23, 2016—after the photographic arrays were administered. This Court has held that if a defendant is in custody on a different offense, he is not in "custody" as to other offenses where he is merely a suspect, and therefore, he would not have a right to counsel during the photographic array relating to those other offenses. *People v Wyngaard*, 151 Mich App 107, 113; 390 NW2d 694 (1986). We see no reason why we could not apply this definition of "custody" to a due process challenge regarding the use of a photographic array to conclude that it was properly administered. See also *People v Perry*, 317 Mich App 589, 596-598; 895 NW2d 216 (2016), citing *People v Hickman*, 470 Mich 602; 684 NW2d 267 (2004) (a photographic identification procedure was proper when the defendant was in custody on a different matter and adversarial judicial criminal proceedings had yet to commence on the current case).

That being said, the record seems to indicate that defendant was not released after March 21 and later brought into custody on March 23. It also indicates that the same detective who investigated defendant as it related to CM was also the investigator as to the alleged crimes against LB and CH. In fact, LB and CH participated in the March 21 photographic arrays with the detective, and therefore, it would appear that defendant was readily available and could participate in a corporeal lineup pertaining to the alleged crimes against LB and CH. See *Wyngaard*, 151 Mich App at 112 (concluding that the defendant's right to counsel attaches if he is in custody, readily available, or the focus of an investigation at the time of the lineup).

Regardless of whether defendant was in custody at the time of the photographic arrays, there is no basis for concluding that they affected the outcome of defendant's trial. We agree with plaintiff that defendant's identity was not a principal issue in these cases. In his own testimony, defendant admitted that he contacted two men through an online website and arranged to meet with them on the morning of the offenses. Apart from the victims' identification testimony, defendant was connected to each of the victims through his telephone number and his internet address. In addition, defendant was captured on surveillance video using LB's bank card, and he admitted using the bank card after he met LB, albeit he claimed that he did so with LB's consent.

Furthermore, even if a photographic identification procedure is improper, an in-court identification is still permitted if a totality of the circumstances indicate that there is an independent basis for the identification to purge the taint caused by the illegal confrontation. *People v Gray*, 457 Mich 107, 115; 577 NW2d 92 (1998); *People v Kachar*, 400 Mich 78, 97;

---

[1] Charges related to complainant CM were dismissed because he failed to appear for the court hearing on June 8, 2016.

252 NW2d 807 (1977). Whether an independent basis exists is determined by considering the totality of the following factors:

1. Prior relationship with or knowledge of the defendant.

2. The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise or other factor affecting sensory perception and proximity to the alleged criminal act.

3. Length of time between the offense and the disputed identification.

4. Accuracy or discrepancies in the pre-lineup or show-up description and defendant's actual description.

5. Any previous proper identification or failure to identify the defendant.

6. Any identification prior to lineup or showup of another person as defendant.

7. Still another consideration . . . , but essential to a determination of judging the reliability of the witness's perceptions is the nature of the alleged offense and the physical and psychological state of the victim. "In *critical situations* perception will become distorted and any *strong* emotion (as opposed to mildly emotional experiences) will affect not only what and how much we *perceive*, but also will affect our *memory* of what occurred."

Factors such as "*fatigue, nervous exhaustion, alcohol and drugs*", and age and intelligence of the witness are obviously relevant.

8. Any idiosyncratic or special features of defendant.

Further, the court should refer to the actual lineup or showup to determine whether the witness's testimony that the identification was due to perceptions received at the time of the alleged offenses is credible in view of the witness's performance at, and the conduct of, the disputed lineup or showup.

The court should attempt, in its evidentiary hearing, to examine as many factors as are applicable to a particular case. All will not be of equal weight, but it is within the trial court's discretion, keeping in mind the appropriate legal and psychological principles to determine, on balance, whether the prosecution has carried its burden of proof. [*Id*. at 95-97 (citations omitted).]

Determining whether there is an independent basis is a factual issue, and because this issue is unpreserved, we must examine whether defendant can demonstrate that admission of the victims' in-court identifications arises to the level of a clear or obvious error, *Jones*, 468 Mich at 355, and whether there is a reasonable probability that the prosecution would not have been able to establish an independent basis had defense counsel challenged the identifications below, *Johnson*, 451 Mich at 124. Defendant does not identify any factors to support his claim that

-7-

there was not an independent basis for the victims' identification. Both victims testified that they met defendant for the purpose of social interaction, and they further testified that they had an opportunity to talk with him face-to-face for an extended period before he threatened them with a gun. Given that they had sufficient opportunity to observe and engage with defendant before he threatened them, it is not likely that their fear of being shot affected their capacity to identify defendant as their assailant. Moreover, both victims testified that they recognized that defendant was not the same person depicted in the profile picture from the website, indicating that they both had sufficient opportunity to observe defendant to make that determination. The victims identified defendant just three days after the offenses, and there is no evidence that they gave any inaccurate descriptions or identified anyone else as their assailant. Although LB identified another person's photo in a different array, he did not identify the other person as the man he met, but as the person depicted in the application profile photo. Because the totality of the circumstances favor the existence of an independent basis for each victim's in-court identification, defendant has failed to demonstrate that the in-court identifications constituted plain error, and has not shown that he was prejudiced by defense counsel's failure to challenge the identifications.

## II. SENTENCING

In Docket No. 335253, defendant argues that he is entitled to be resentenced because the trial court erred in assessing 15 points for offense variable (OV) 8. We disagree.

When reviewing a challenge to the scoring of the sentencing guidelines, this Court reviews the trial court's factual determinations, which must be supported by a preponderance of the evidence, for clear error. *People v Hardy,* 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

OV 8 is victim asportation or captivity, MCL 777.38. The trial court is directed to assess 15 points if "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). The trial court assessed 15 points in the case involving LB because defendant picked up LB at a fast food restaurant in a high traffic area, drove him to a more secluded residential neighborhood, and then took him to a park to sexually assault him. Defendant argues that the park was not a place of greater danger than defendant's vehicle, because the park was open to the public. However, although the car was parked in a residential area where residents could have viewed the activity, the sexual offense occurred sometime between 2:00 a.m. and 3:42 a.m. (the time at which defendant used LB's bank card), at a time when the park was not likely to be occupied. These facts support a finding that, at the time of the offense, the park was a more secluded location. Thus, defendant's movement of LB to the park placed him in greater danger. Accordingly, the trial court did not err by assessing 15 points for OV 8.

In addition, as defendant concedes, the scoring of OV 8 did not affect defendant's sentencing guidelines range. Defendant received a total OV score of 95 points, placing him in OV Level V (80-99 points) under the applicable sentencing grid. MCL 777.62. Because a 15-point reduction would not change defendant's placement in OV Level V, any scoring error

would not entitle defendant to be resentenced.[2] *People v Francisco*, 474 Mich 82, 89-92; 711 NW2d 44 (2006).

Affirmed.

/s/ Thomas C. Cameron
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher

---

[2] Defendant asserts that he is entitled to be sentenced on the basis of accurate information. However, the alleged error does not involve the accuracy of information, but rather the trial court's determination of whether the facts support the scoring of OV 8.